[No. 13275. Department Two. August 30, 1916.]

## J. B. VIOLETTE, *Appellant*, v. INSURANCE COMPANY OF PENNSYLVANIA, *Respondent*.[1]

INSURANCE—AGENTS—AUTHORITY—"OSTENSIBLE AGENCY" — ESTOPPEL TO DENY. Where all the business of a licensed insurance agent, M. F. H., had been delegated to, and transacted in her name by, her husband, C. E. H., who was personally known to the company as "Gene" H., supposing him to be M. F. H., he had ostensible authority to act as agent and the company, having so dealt with him for a term of years, is estopped to deny his authority, through a lack of care in its mistake as to his identity.

SAME—REGULATION — ISSUANCE OF POLICY — COUNTERSIGNING. 3 Rem. & Bal. Code, § 6059-36, providing that it shall be unlawful for an insurance company to write a policy unless countersigned by its duly authorized agent does not necessarily avoid a policy not signed by the duly licensed agent, as the statute does not avoid the policy by express terms and was intended as a restriction on insurance companies.

SAME—POLICY—CANCELLATION—WAIVER OF NOTICE. The five-day written notice of cancellation of an insurance policy provided by statute is waived by the insured, where he assented to its cancella-

[1]Reported in 159 Pac. 896.

tion provided the risk was rewritten in another company, which was done; and it is immaterial that the policy was not surrendered at the time, where he did not have it with him and agreed to surrender it as soon as he returned from a trip upon which he was starting.

APPEAL—DECISION—NEW TRIAL. Upon reversing a judgment of dismissal upon granting a nonsuit, a new trial must be granted, where the answer presented an issue of fact.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered June 23, 1915, upon granting a nonsuit, dismissing an action on a fire insurance policy. Reversed.

*C. B. Hughes* and *Hughes & Adams*, for appellant.

*Granger & Clarke*, for respondent.

HOLCOMB, J.—This action was to recover on a fire insurance policy for the loss of a certain stock of liquor. Appellant having been nonsuited below, prosecutes this appeal.

There is no serious conflict in the evidence, which shows that C. E. and M. F. Hamilton, husband and wife, respectively, were each the authorized agent of several insurance companies. Appellant was experiencing trouble in keeping his stock of liquor insured, and was notified by C. E. Hamilton, on December 28, 1914, that a former policy of the Prussian National Insurance Company on the liquor had been ordered canceled, but that he would write the risk in another company, to which appellant assented. C. E. Hamilton then wrote a policy in respondent company covering the stock of liquor, and countersigned the same as agent on December 29, 1914. The loss occurred by fire on the next day and the policy was not delivered to appellant until after the loss, as he was away on a business trip. After this suit was commenced, it was discovered that M. F. Hamilton and not C. E. Hamilton was the duly licensed agent of respondent, and that, after she had taken out the license, she turned over the entire business to her husband and delegated to him all the powers as agent that she possessed, including the power to

countersign policies, without any express authority to do so from her principal.

Respondent's first defense to the action was that C. E. Hamilton was not its agent, and that M. F. Hamilton had no authority to delegate the entire agency itself to a third person without the principal's knowledge or consent, and therefore that C. E. Hamilton could not bind respondent by his acts. It therefore becomes incumbent on appellant to prove C. E. Hamilton respondent's agent, and to do so he must prove either that C. E. Hamilton was an actual agent of respondent or that respondent was estopped to deny the existence of such agency.

There is no contention that C. E. Hamilton was actually appointed by respondent as its agent, and if appellant is to prevail, it must be upon the theory of a sort of estoppel. C. E. Hamilton was known generally in Leavenworth as "Gene," and was so known to the appellant. Other policies were issued by respondent company in Leavenworth, and as M. F. Hamilton said she never had anything to do with the business, such policies must have been written by "Gene" Hamilton. Strout, the general manager of respondent in Washington, located in Seattle, had known "Gene" (C. E.) Hamilton for about six years prior to the trial of this case, frequently meeting and doing his company's business with him, but did not know his initials although he supposed they were M. F. It was simply a case of mistaken identity, as he knew "Gene" Hamilton well and personally, thought he was respondent's agent, and knew the agent's initials were M. F., but thought those were Gene's initials. All the correspondence carried on between the Hamiltons and Strout was done by C. E. Hamilton, although he signed the letters as M. F. Hamilton and attended to the entire business of the agency. During the time appellant was procuring the insurance from by C. E. Hamilton, although he signed the letters as M. F. Hamilton was the agent, since he attended to all the transactions; and never during any of his visits to the office did

he see M. F. Hamilton, nor did he know that she was interested in the business in any manner, or that any other than C. E. Hamilton was the agent; nor did he see anything that would put him on inquiry.

It is evident that C. E. Hamilton had at least ostensible authority to act as respondent's agent, and appellant, relying upon this ostensible authority, dealt with C. E. Hamilton as such agent. Ostensible agency as defined by Mechem in his work on Agency, vol. 1 (2d ed.), § 57, is where the principal intentionally or from want of ordinary care leads a third person to believe another to be his agent who has never really been employed or authorized by him. The rule is well stated in *Phoenix Ins. Co. v. Walter*, 51 Neb. 182, 70 N. W. 938, wherein that court held that:

"Ostensible authority to act as agent may be conferred if the party to be charged as principal, affirmatively or intentionally, or by lack of ordinary care, causes or allows third persons to trust and act upon such apparent agency." (Syllabus.)

See, also, *Thomson v. Shelton*, 49 Neb. 644, 68 N. W. 1055; *Blanke Tea & Coffee Co. v. Trade Exhibit Co.*, 5 Neb. (Unof.) 358, 98 N. W. 714.

This rule is based on the ground that, by reason of this lack of care, the principal is estopped to deny the agent's authority. It is evident that respondent company was guilty of lack of care under the facts in this case, for its duly licensed agent was a woman whose license was secured by Strout, and for quite a period of time it thought its agent in Leavenworth was a man, "Gene" Hamilton, whom Strout well knew and with whom Strout did business as the agent of the company, thus holding him out to the public as such agent. Under the rule announced above, ostensible authority to act as agent was conferred upon C. E. Hamilton by reason of this lack of care on the part of respondent, and respondent is therefore estopped to deny such agency. Nor does 3 Rem. & Bal. Code, § 6059-36, which provides that it shall be un-

lawful for an insurance company to write a policy unless countersigned by the duly authorized agent, necessarily make a policy void if not signed by the duly licensed agent, as it does not make the policy void by its express terms and is for the purpose of placing restrictions on insurance companies.

In conclusion, respondent maintains that the policy in question was intended as a substitution for the Prussian National policy when the latter was canceled, that the Prussian National policy was never canceled, and that the policy of respondent company was therefore never in effect. We think respondent in error, however, in assuming that the Prussian National policy was never canceled. It is true there was no five-day written notice of the cancellation served on appellant as provided by statute, but this may be waived by the insured as it is made for his benefit alone. *Tacoma Lumber & Shingle Co. v. Firemen's Fund Ins. Co.*, 87 Wash. 79, 151 Pac. 91. The evidence shows that, when C. E. Hamilton received word from the head office to cancel the Prussian National policy, he proceeded to appellant's place of business and notified him that the policy would be canceled by the company. To this appellant assented, provided the risk was written in some other company. He was very anxious to have his stock kept insured at all times; it was immaterial to him what company his goods were insured in as long as they were insured. We think the facts show clearly that respondent waived, as he assuredly could, the five-day notice of the cancellation, and that such cancellation took effect at the time the risk was written in some other company.

Respondent makes some contention that there never was any cancellation, as appellant did not surrender the Prussian National policy at the time he received the oral notice of cancellation. It was shown that he was just about to leave the town on business and did not have the policy with him and said he would surrender it on his return. The immediate physical surrender of the policy we deem immaterial, as it is the intention of the parties that governs, and we think the

minds of the parties met that cancellation should take effect upon the risk being written in some other company. The policy in controversy was written on December 29, 1914, the day before the fire, and at that time the Prussian National policy became canceled and the new policy effective.

Judgment reversed, and judgment ordered for appellant, with costs.

MORRIS, C. J., MAIN, and PARKER, JJ., concur.

## ON REHEARING.
### [Decided November 28, 1916.]

PER CURIAM.—The original opinion in this case ordered judgment for appellant with costs. This was inadvertent. There is an issue tendered by respondent as to the value of the insured property which was destroyed, and an affirmative defense in the answer setting up that there was other insurance on the property, and claiming contribution from such other insurers. The case was disposed of by the court below on respondent's motion for judgment of nonsuit upon plaintiff's evidence, and the cause thereupon dismissed. The respondent did not waive its right to have the issues tendered by its answer determined by trial thereof, by its motion for judgment of nonsuit. *Frye & Bruhn v. Phillips*, 46 Wash. 190, 89 Pac. 559, 93 Pac. 668. For this reason, a new trial is awarded, instead of a judgment for appellant. To this extent, the original opinion is modified, appellant to recover costs of this appeal; and in all other respects the petition for rehearing is denied.